UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**DANNY TURANO,**

       **Plaintiff,**

              v.

**ANDREW SAUL,**
**Commissioner of Social Security,**

       **Defendant.**

Case No. 2:18-cv-12042
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Danny Turano for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On November 14, 2013, Plaintiff filed an application for benefits, alleging that he has been disabled since August 2, 2012, due to a number of physical and mental impairments. R. 19, 96, 108, 214–17, 241. Plaintiff's application was denied initially and upon reconsideration. R.

---

[1] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

1

129–33, 137–42. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 143–44. Administrative Law Judge Ricardy Damille ("ALJ") held hearings on September 7, 2016, and on January 10, 2017, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 38–93. In a decision dated March 27, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 2, 2012, the alleged onset date, through June 30, 2014, the date that Plaintiff was last insured for benefits. R. 31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 22, 2018. R. 1–6. In denying Plaintiff's request for review, the Appeals Council acknowledged that Plaintiff submitted information from Monte A. Del Monte, M.D., an ophthalmologist. R. 2. However, the Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." *Id.*; *see also* R. 9–10 (copy of undated letter from Dr. Del Monte summarizing Plaintiff's ocular history, including "diplopia and abnormal eye movements following a traumatic head injury in a jet ski accident in 2009[,]" Plaintiff's treatment history, and Dr. Del Monte's diagnoses and prognosis).

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 7, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[2] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 22. The matter is now ripe for disposition.

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the administrative decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220

4

F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

5

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is sufficiently developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff will be found to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 32 years old on the date on which he was last insured for disability benefits, June 30, 2014. R. 30. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date through his date last insured. R. 21.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical disc herniation; cervical radiculopathy; superior oblique palsy in the right eye; hypertropia; astigmatism; depression; and anxiety. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listed impairment. R. 21–23.

At step four, the ALJ found that Plaintiff had the RFC to perform "less than the full range of sedentary work" subject to various exertional and non-exertional limitations. R. 23–30. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an iron worker. R. 30.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 75,000 jobs as a scale operator; approximately 40,000 jobs as a preparer; approximately 70,000 jobs as a document preparer—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 2, 2012, his alleged disability onset date, through June 30, 2014, the date on which he was last insured for disability benefits. R. 31.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 18. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 20.

## IV.     RELEVANT MEDICAL EVIDENCE

On May 6, 2015, Monte A. Del Monte, M.D., an ophthalmologist and Director of Pediatric Ophthalmology and Adult Strabismus at the University of Michigan, W.K. Kellogg Eye Center, administered a forced duction on both of Plaintiff's eyes, right superior oblique recession 6.5 mm by hangback technique, and left superior oblique recession 5.5 mm by

8

hangback technique. R. 417, 419–20. On July 7, 2015, Plaintiff presented for follow up with Dr. Monte. R. 417–21. Plaintiff reported continued problems with focusing and blurred distance vision, but without double vision. R. 417. In recounting Plaintiff's ocular history, Dr. Del Monte noted a traumatic jet ski accident that occurred in 2009 and also noted that Plaintiff had experienced a "lazy eye" as a child. R. 418. Dr. Del Monte reported a history of incomitant intermittent left hypertropia in primary position, increasing in left gaze and switching to right hypertropia in right gaze. R. 418, 420. Post-operatively, Plaintiff's alignment had improved but there was continued small left hypertropia, worse in left gaze and left head tilt, but with large intorsion preventing fusion due to torsional diplopia. *Id*. According to Dr. Del Monte, Plaintiff would require additional eye muscle surgery to allow for improved binocular function with elimination of torsional diplopia. *Id*.

In May and October 2015, Plaintiff underwent strabismus surgery in an attempt to restore binocular vision and correct hypertropia and cyclotropia. *See* R. 422. In a report dated January 4, 2016, Dr. Del Monte diagnosed "post traumatic chronic cyclovertical visual disturbance and torsional diplopia / loss of [illegible] resulting in visual distortion, dizziness, diplopia. Exam c/w [consistent with] bilateral superior oblique overaction, alternating hypertropia & possible [illegible] deviation." *Id*. According to Dr. Del Monte, Plaintiff would likely need additional surgery and prism glasses. *Id*. Dr. Del Monte opined that Plaintiff's diagnoses limited his ability to participate in gainful employment and/or occupational training because Plaintiff's "large torsional or vertical misalignment of eyes prevents binocular interaction and results in diplopia, loss of depth perception, disorientation, and [illegible] dizziness." *Id*. Moreover, Dr. Del Monte opined, Plaintiff's impairments cannot be corrected with prism glasses alone. *Id*. As a result, Dr. Del Monte opined, Plaintiff could not engage in

9

any gainful employment and/or occupational training for at least 12 months and, perhaps, permanently. *Id*.

## V. DISCUSSION

Plaintiff argues, *inter alia*, that substantial evidence does not support the ALJ's RFC determination that Plaintiff is able to perform a limited range of sedentary work. *Plaintiff's Moving Brief*, ECF No. 18, pp. 14–15, 26–38. A claimant's RFC is the most that the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is the ALJ who is charged with determining a claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer,* 186 F.3d at 429. However, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak*, 777 F.3d at 615 (stating that the ALJ has discretion to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff has the RFC to perform "less than the full range of sedentary work":

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) except he must avoid all exposure to hazardous machinery and unprotected heights. He is restricted

> to work requiring no more than occasional[3] depth perception, occasional far and peripheral acuity, and occasional nighttime vision, but frequent near acuity. Psychiatrically, the claimant can understand, remember, and carry out simple instructions and have occasional interaction with coworkers, supervisors, and the public. However, the claimant's work must be performed in an environment free of fast production requirements involving few, if any, workplace changes.

R. 23. Plaintiff argues that substantial evidence does not support this RFC determination because, *inter alia*, it fails to account for all of Plaintiff's visual limitations, particularly his diplopia (double vision), loss of depth perception, disorientation, and dizziness as noted by his treating ophthalmologist, Dr. Del Monte. *Plaintiff's Moving Brief*, ECF No. 18, pp. 14–15, 32–35.

> The ALJ considered evidence from Dr. Del Monte as follows:
>
> On May 6, 2015, the claimant underwent a procedure where he received a forced duction on both eyes, right superior oblique recession 6.5 mm by hangback technique, and left superior oblique recession 5.5 mm by hangback technique that was performed by Monte A Del Monte, M.D., an ophthalmologist (Exhibit 16F/4). At a follow-up visit to Dr. Del Monte on July 7, 2015, the claimant reported that he still felt the same overall, out of focus, and had blurred distance vision, but no double vision (Id. at l). Following an ocular exam, Dr. Del Monte assessed the claimant with a history of incomitant intermittent left hypertropia in primary position, increasing in left gaze and swatching [sic] to right hypertropia in right gaze, and significant intorsion on double Maddox rod and fundus exam consistent with severe bilateral SO overaction (Id. at 4). Dr. Del Monte noted that evaluations performed by multiple ophthalmologists could not determine a cause or treatment plan for the claimant's ocular issues, but he recommended a bilateral superior oblique recession as the optimal therapy (Id.). Overall, Dr. Del Monte said the claimant's post operative alignment had improved, but there was still continued small left hypertropia worse in left gaze and left head tilt, but with large intorsion preventing fusion due to torsional diplopia (Id.). As such, the claimant required additional touch-up eye muscle surgery to eliminate this problem and allow for improved binocular function with elimination of torsional diplopia (Id.).

R. 28. The ALJ went on to address Plaintiff's vision issues as follows:

> Despite numerous symptoms involving the claimant's vision, he had a reduction in dizziness, nausea, anxiety, headaches, neck pain, and unsteadiness when given a

---

[3] "'Occasionally' means occurring from very little up to one-third of the time" and "'[f]requent' means occurring one-third to two-thirds of the time." SSR 83-10.

11

> new lens (Exhibit 15F). At the July 2015 exam the claimant had no double vision (Exhibit 16F). I note that at the hearing held on September 7, 2016, the claimant testified that his double vision symptoms were present all of the time but he also admitted that he was able to drive. He testified that he was able to drive in 2016 for about a mile and he had no issue when he drove. In his adult function report, the claimant indicated that he travelled by driving, though "not as much anymore" (Exhibit 3E at 4). The claimant's report and testimony concerning his ability to drive is inconsistent with his allegations of double vision occurring all of the time. I note that at the 2nd hearing, he testified that he has not driven since the 1st hearing.

R. 29. However, the ALJ did not expressly weigh Dr. Del Monte's opinions, nor did the ALJ address Dr. Del Monte's January 4, 2016, report, R. 422.

In making a disability determination, an ALJ must evaluate all record evidence. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. An ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli,* 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"

12

*Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding the weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6); *see also* SSR 96-2p.[4] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason

---

[4] The Social Security Administration amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. § 404.1527 (providing that the rules in this section apply only to claims filed before March 27, 2017), and SSR 96-2p was rescinded. Plaintiff filed his claim on November 14, 2013.

or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

Here, although he considered Dr. Del Monte's May and July 2015 records when he discounted Plaintiff's vision difficulties, the ALJ did not articulate or explain what weight he accorded Dr. Del Monte's opinions. More significantly, the ALJ appears to have wholly failed to consider Dr. Del Monte's January 4, 2016, report which observed that Plaintiff had no depth perception—a finding that is inconsistent with the ALJ's determination that Plaintiff's RFC included the ability for, *inter alia*, occasional depth perception. *Compare* R. 23 *with* R. 422. Although an ALJ is free to determine whether and to what extent to credit a treating physician's opinions, the ALJ cannot reject evidence from a treating physician "for no reason[.]" *Morales*, 225 F.3d at 317 (citation and internal quotation marks omitted); *see also Fargnoli*, 247 F.3d at 43 (stating that when an ALJ "weigh[s] the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence."). The ALJ's error in this regard is particularly significant because the opinions of Dr. Del Monte—

14

Plaintiff's treating physician—are entitled to great weight unless they are inconsistent with other substantial evidence. *See Nazario*, 794 F. App'x at 209; *Hubert*, 746 F. App'x at 153; *Brownawell*, 554 F.3d at 355. In addition, by apparently crediting information in Dr. Del Monte's July 2015 records but ignoring other information in Dr. Del Monte's January 2016 report, the ALJ improperly engaged in prohibited "cherry picking." *Pastuch v. Comm'r of Soc. Sec.*, No. CV 17-989, 2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of treating professionals or cherry pick evaluations, diagnostics, or opinions that support a particular conclusion."); *DeJesus v. Colvin*, No. CIV. 14-4798, 2015 WL 4902159, at *8 (D.N.J. Aug. 17, 2015) ("Adopting only portions of an opinion that support the ALJ's RFC findings while failing to address those portions that contradict them . . . will not suffice as an adequate explanation."); *Cintron v. Comm'r of Soc. Sec.*, No. 2:13-CV-7125, 2014 WL 6800613, at *10 (D.N.J. Dec. 2, 2014) ("An ALJ cannot rely on portions of documents from the record without also refuting 'the statements made therein that contradict his findings.'") (quoting *Cadavid v. Comm'r of Soc. Sec.*, No. CIVA 12–7214, 2014 WL 839453, at *9 (D.N.J. Feb. 26, 2014)).

Without specifically naming Dr. Del Monte, Defendant argues that Plaintiff improperly relies on medical evidence that was generated after the date on which Plaintiff was last insured, and characterizes such evidence as irrelevant. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, p. 23. Defendant also observes that no treating or examining doctor opined prior to the lapse of Plaintiff's insured status that Plaintiff had specific visual restrictions. *Id.* at 22. Defendant's position in this regard is not well taken.

"[M]edical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue." *Alston v. Astrue*, No. 10-cv-

15

839, 2011 WL 4737605, at *3 (W.D. Pa. Oct. 5, 2011); *see also Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion nearly five years after the date last insured "lacked probative value" because it "shed no light" on the claimant's condition during the relevant period); *Porter v. Comm'r of Soc. Sec.*, No. CV 18-03744, 2019 WL 2590994, at *4–5 (D.N.J. June 25, 2019) (finding that the ALJ did not err in assigning little weight to a physician's opinion on the basis that the opinion "'was rendered more than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back' to the disability evaluation period") (citations omitted).

     Here, Dr. Del Monte's findings, diagnoses, and opinions are relevant because Plaintiff's vision problems appear to relate to his 2009 jet skiing accident and thus arguably relate to the period at issue in this case. R. 418. Notably, the ALJ considered Dr. Del Monte's July 2015 records as well as other medical evidence that was also generated after June 30, 2014, *i.e.*, the date on which Plaintiff was last insured. *See, e.g.,* R. 30 (assigning little weight to the opinions of state agency reviewing physicians Arthur Pirone, M.D., and Arvind Chopra, M.D., because, *inter alia*, these physicians rendered their opinions on January 9, 2014, and July 1, 2014, respectively, "which omits a significant portion of the claimant's medical history since then"); R. 26−30 (detailing evidence generated through November 2016). In short, the ALJ should have considered all of Dr. Del Monte's records, including his January 2016 report, or should have explained why the May and July 2015 records were relevant but the January 2016 record—which conflicted with the ALJ's RFC determination—was not. *See Fargnoli*, 247 F.3d at 43; *Morales*, 225 F.3d at 317; *Pastuch*, 2018 WL 2018063, at *9; *Cintron*, 2014 WL 6800613, at *10.[5]

---

[5] Defendant's reliance on the opinion of reviewing state agency physician G. Spitz, M.D., dated July 2, 2014, that Plaintiff's vision issue "is most certainly [a] non severe impairment[,]" *see Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 20, p. 22 (citing R. 119), is also

An ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. As it relates to the RFC determination and the ALJ's consideration of Dr. Del Monte's findings, diagnoses, and opinions, this administrative decision does not satisfy that standard. The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[6]

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: August 14, 2020                     *s/Norah McCann King*
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE

---

unavailing. As set forth above, the ALJ specifically identified Plaintiff's superior oblique palsy in the right eye and hypertropia as severe impairments, finding that these impairments "have more than minimally affected the claimant's ability to perform basic work activities." R. 21.

[6] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the RFC and Dr. Del Monte's records and opinions, the Court need not and does not consider those claims.